case for the morning. Maria Gonzalez Perez v. Pamela J. Bondi. And you may approach counsel. Good morning. One moment. We're trying to make sure that you have your. I don't see him on yet. Hello, counsel. Here he comes. You may proceed. May it please the court. My name is Abdullah Salah. I'm representing the appellants. The appellants are seeking asylum and Convention Against Torture Relief. That request was denied by the immigration court and then summarily. That decision was summarily affirmed by the Board of Immigration Appeals. The appellants here are a family. It was a mother and her children who came to the United States after receiving some threats via telephone calls to their home. Those threats were particular. They identified her children and they asked for money in the form of an extortion related to I believe 5,000 pesos, which is an amount that the petitioners here are unable to satisfy. After the second or the last threat, they escaped. They went to a small farm town and hid for a few days and subsequently came to the United States. That decision was, that case was brought before the immigration court and was denied. Basically, the immigration court stated that this was just ordinary crimes and not a crime that involved asylum in the form of persecution and particular social group. The judge did not analyze the particular social group at all. The judge just dismissed the case by stating that this is ordinary crime that is rampant throughout the country and stated that that the case does not meet the requirements for asylum. But didn't the judge rely on the fact that there could be relocation within the country? Yes, the judge did address that relocation should have been, that they are able to relocate and address the fact that they moved to a small farm town. However, I don't believe that that's relocation. I believe that that was simply them hiding. It was only a few days and afterwards they needed to escape. Also, relocation requires that it is reasonable. In this situation, it's not reasonable. This is a family, young children. She doesn't have resources. She doesn't have the means to be anywhere else in the country. Aside from that, the fact that we're stating that this social group is people who are residing in a town that is pretty much run by cartels. It has no protection from the police. The social group must be defined with particularity so as to identify a distinct group of people. And the social group that Ms. Gonzalez-Perez identifies is very amorphous. Wouldn't virtually any victim of a crime in a high crime city that the police were unable to prevent or solve after the fact be able to claim membership in such a group? I think that's, you know, the biggest problem here. I think it matters who is committing the crime. If it's coming from a cartel, an organization, which the authorities fear and are unwilling to enter the town to protect the citizens from, then in that case, yes, those people would be allowed to claim asylum and be granted that relief because if it was just anybody that's committing the crime, I believe the authorities may be able to come in and protect those people. But if it's because of a cartel that many times has connections and the authorities are complicit with them, and in those situations, they would not come and protect the citizens. And in those situations, I believe that this is the particular group that we are. Given that the Knights Templar became defunct in 2017, what basis do we have to believe that Ms. Gonzalez-Perez and her family would be targeted for harm if she were returned to Mexico? Well, we believe that the reason that they would still be targeted is because they defied the group, and the cartels would not allow people to defy them. Had they not been targeted, left the town, and everything was fine, there wouldn't be an issue of them returning. But because they were specifically targeted, and they left, and they didn't comply with the request, they would be targeted to show other citizens in the town that you must comply. Would you agree, or maybe you agree, that the Knights Templar became defunct in 2017? They do change names, these groups. There are still cartels in the town. But I believe the fact that they were the subject of past persecution would be sufficient to grant the asylum claim. How did we get the threat to the level of being seen or viewed as past persecution? Well, the amount of the threat itself was not questioned. The level of the threat was not questioned by the court at the immigration level. It was only that it was not carried out. They didn't question it. I'm asking why is the threat equivalent to past persecution based on our case law? Well, threats can be. If the threats are to the level of intimidation or that threaten severe harm, they can still be persecution. It doesn't have to be physical, it can be mental. And I believe when we're talking about calls of threats to young children and a family that has no ability to protect themselves, that can cause extreme hardship and rise to the level of mental harm. And what do we do with the government's representation that this argument was waived, or some of these arguments were waived? Yes, I saw that, but I don't believe it was waived. I believe it was addressed at the board level, and it's addressed at this point as well. The judge's decision did not address all of these points, and we're addressing them point by point at this point. But how can you address the relocation issue before the BIA? Well, part of the analysis of determining whether they should be granted asylum would be whether or they have the ability to relocate. And I believe that's part of the analysis that was addressed. But aside from asylum, there's also a claim for convention against torture. If there's an issue with regard to whether this is a social group, convention against torture relief does not require that there be a social group. It only requires that there is a fear of harm and that the government acquiesced to that. And acquiescence can mean that the government just is unwilling to protect the citizens in the town. Would you like to save your remaining time for rebuttal? Yes. Thank you. Government? You're muted on our end. We're unable to hear you. Okay. May it please the court. Robert Tennyson for the Attorney General. Let me go through and just address a couple of points that this court has already asked about. First off, the petitioners did not, in their opening brief, challenge the past persecution determination of the agency. That's been forfeited but not waived. Second, with regard to the question about whether the Knights Templar is defunct, the petitioner's own evidence before the immigration judge establishes that it went defunct in 2017. I believe that's, let's see, between pages 260 and 265 of the record. And the petitioner, in his argument, did not in any way affirmatively state otherwise. He just said there are other groups that are out there that the petitioner might fear. Third, with regard to relocation... Mr. Tennyson, I'm sorry. Yes, Your Honor. And so, counsel, you were referencing, said one more time, that there was no contention regarding the group. I just missed your point, point two. I'm sorry. Right. So when Judge Roedner asked petitioner's counsel whether it's correct that the Knights Templar ceased to exist in 2017, petitioner's counsel did not say, no, the record doesn't show that. He just said there are other groups. And in fact, but the record itself expressly states, and I want to be clear on this, between pages 260 and 265 that the Knights Templar, the group that the petitioner fears, went defunct in 2017. Now, moving on to the exhaustion point, the petitioner did not exhaust dispositive aspects of their claim. The petitioner did not exhaust before the board any question with regard to nexus and did not address or did not exhaust any question with regard to, I guess, the immigration judge's finding that there was no, that she did not possess an objectively reasonable fear of future persecution. Since those are both dispositive of the asylum and withholding claims, this court doesn't actually have to address them on the merits. It can just find them unexhausted and not deal with them. The same is true with the Kat claim. Again, the petitioner, in her brief to the board, did not raise a contention either, one, to the immigration judge's finding that the public official would acquiesce in any future torture of the petitioner, nor did she raise any issue with respect to relocation in her brief to the board. For that reason, those two are both dispositive of the Kat claims. And therefore, every single claim the petitioner has raised before this court, there are issues that, dispositive issues that have been, that are unexhausted. Praying next to if this court found that they weren't unexhausted with regard to asylum, the substantial evidence supports both the past, the finding that any harm that she would face rises to the level of past persecution. She only received two threats, five phone, and reacted immediately to them. May I stop you there? Yes, Your Honor. You know, Judge Salvara said the caller's threats were neither credible nor imminent. Well, I couldn't disagree with her more on that. The caller had specific information about her made two threatening phone calls, so far as we know, didn't follow through on the threats, only because her family quickly fled to a remote location. Right, Your Honor. And that did happen. It also happened within the context of her sister, having been having had her husband kidnapped as well. And that's not to say that that the judge, looking at all those facts, could have found past persecution. But given just sort of the fact that there were only those two threats in the abstract, even if they did name the children and requested the 5,000 pesos, we don't know beyond that how active or how aggressive the Knights Templar would be in her case, or her ability to, and how it affected her. Remember, the threats to constitute persecution generally have to be systematic and severe. And here, the immigration judge could reasonably conclude that the, I guess, that the threats that she was exposed to were neither systematic nor severe. But even if that's not the case, the petitioner didn't raise any issue about the past persecution finding in her opening brief. Forfeited. And also, there are other dispositive issues at play here. There is the nexus finding where the immigration judge found that the Knights Templar are solely motivated by obtaining money, that there is no other motivation here. And that is, you know, that is supported by substantial evidence. When the Knights Templar call, they call simply asking for money. They're kidnapping, asking for cash. And this court has long held that an attempt to just line one's coffers is not going, is not, does not provide a nexus. Moreover, on the unwavering and unwillingness of the local government, the petitioner never went to the police. And the petitioner's testimony is that her sister Lydia, whose husband was kidnapped, did not go to the police to report the offenses. And then we have background information from the state saying that they do try to protect people within the country. And even petitioner's evidence that's, you know, with regard to the burning of churches or other activities, you do have statements to report crimes to the authorities. There is enough evidence that the immigration judge provided had substantial evidence to make the finding that the government would be able and willing to protect the petitioner. Finally, turning to Kat, there's sufficient evidence, substantial evidence supports that as the immigration judge's findings there as well. One, you know, after the petitioner left Mexico, she was never contacted again. Her family still resides there. Her sister, whose husband was kidnapped, continues to reside in Mexico, albeit somewhere else. There's no, yes, is there any further question? With regard to whether or not a police officer would acquiesce in any harm by the cartel, first, you know, the cartel has gone defunct. Second, there's no indication beyond just sort of general evidence that the police sometimes engage in acts with impunity with cartels or drug gangs, that in this specific case that that would be so. And Council, I want to make sure that I'm following the argument. We're not suggesting here that Ms. Gonzalez-Perez had to wait until her children had been harmed for it to amount to persecution. I just want to make sure I'm following. Oh, right. We're not making that argument. She didn't have to. She would not have had to wait. All we're saying with regard to, and that's the past persecution claim with asylum, is that those. Council, I'm asking a follow-up. Go ahead. Yes, Your Honor. The problem is that the government's argument is two phone calls are not enough. And that, I don't, I hope you don't mean that when we're talking about someone's children. I understand the significance of the threats. And, I have a child. If the same thing happened, I would be frightened, no doubt. The question is whether the immigration, just substantial evidence, could support the immigration judge's conclusion that the two phone calls that she received, right? The first one that says, I know where your children are, 85,000 pesos or else. And the second phone call in which they, in which, again, it's, I know they're at school now and I will kidnap them if you don't pay us. Whether that is sufficient to rise to the level of persecution. And it is frightening, no doubt. And, but the thing is. Probably enough for her and her family to pack their bags and run. Right. But that is a subjective response to it. That is her response to it. And I'm not saying across the board that an immigration judge couldn't find that that's the case. But here, on the specific facts of this case, when that's all you have, and you don't have the Knights Templar ever calling her again, you don't have any follow-up, the immigration judge could reasonably, and maybe it's at that far sliver of reason, but it's there, could conclude this. And as long as a reasonable fact finder could come to this result, then this court has to uphold it. But in any event, this court doesn't have to address that issue because the petitioner didn't raise it in the opening brief. But beyond that, there are, and as well, there are other dispositive issues at play here, and other dispositive aspects of the immigration judge's decision. So even if the court were to find that there was past persecution, this court would still be confronted with the lack of nexus, the lack of inability or willingness, unwillingness by the government to protect her, and in the CAT context, her ability to relocate and the ability of a public official, you know, and no one did, you know, I guess what? Substantial evidence supporting the immigration judge's determination that the government, you know, that a public official wouldn't acquiesce in any harm to her. This court has no further questions. For me, the government rests. Thank you, counsel. Rebuttal? Yes. I'd just like to address that the evidence that was presented was never, the court found that the evidence was credible, and there was no evidence presented by the government opposing that evidence in any way. Also, part of our argument is that the court at the immigration level did not even take into account the evidence that was presented. Never was it mentioned, never was a mention made regarding the country reports that are made by the U.S. government, the human rights report that's mentioned how the governments in these towns acquiesce to this type of extortion. That was not questioned. The immigration court didn't analyze it, and what we're saying is that it should have been analyzed. If it was analyzed, then a different approach would have been made, a different decision would have been made. Also, addressing the fact that her sister continues to live there, well, the sister paid the extortion. The sister is one of the reasons why the fact that the sister was confronted is one of the reasons why she left so quickly, because she knows what can happen. This is not random. It was actually targeting her. Thank you, counsel. That's our last case for the morning, and we will take that case under advisement.